161 A.3d 172

**IN RE: ADOPTION OF: L.B.M., a Minor**

**Appeal of: J.P., Mother**

**In re: Adoption of: A.D.M., a Minor**

**Appeal of: J.P., Mother**

**No. 84 MAP 2016**
**No. 85 MAP 2016**

Supreme Court of Pennsylvania.

ARGUED: December 6, 2016

DECIDED: March 28, 2017

430

Kristin Diller Nicklas, Esq., Nicklas Law Offices, for J.P., Appellant.

Michael John Connor, Esq., Walker Connor & Spang, LLC, for J.D.M., Appellee.

Kristen B. Hamilton, Esq., Stiltner, Taccino & Hamilton, for Guardian Ad Litem, Appellee.

Theresa M. Yaukey, Esq., MidPenn Legal Services, for Franklin County Children and Youth Services, Appellee.

Marsha Levick, Esq., Riya Saha Shah, Esq., Lisa Bolotin Swaminathan, Esq., Juvenile Law Center, for Juvenile Law Center, ACLU of PA, Community Legal Srvs., National Assoc. of Counsel for Children, et al., Amicus Curiae.

Kevin Lewis Quisenberry, Esq., Community Justice Project, for Community Justice Project, Amicus Curiae.

Benjamin Nelson Zuckerman, Esq., Juvenile Court Project, for Juvenile Court Project, Amicus Curiae.

SAYLOR, C.J., BAER, TODD, DONOHUE, DOUGHERTY, WECHT, MUNDY, JJ.

Justice Wecht delivers the Opinion of the Court with respect to Part I, Part II(A), and Part II(C), and announces the judgment of the Court. The opinion is joined in full by Justices Donohue and Dougherty. Chief Justice Saylor and Justice Todd join the opinion, except with respect to Part II(B), and the Chief Justice files a concurring opinion, joined by Justice Todd. Justices Baer and Mundy file separate dissenting opinions, which they each cross-join.

**OPINION**

JUSTICE WECHT

This case requires us to determine whether 23 Pa.C.S. § 2313(a), which mandates the appointment of counsel for children involved in contested involuntary termination of parental rights ("TPR") proceedings, is satisfied by the appointment of a guardian *ad litem* ("GAL") provided that the GAL is an attorney. We hold that under the facts of the present case,

it is not. Accordingly we reverse and remand for further proceedings consistent with this decision.[1]

## I. Background

At the outset, we define the terms that provide the backdrop for our resolution of this issue. In cases involving children, the law acknowledges two separate and distinct categories of interest: a child's legal interests, which are synonymous with the child's preferred outcome, and a child's best interests,[2] which the trial court must determine.[3] While the best interests determination belongs to the court, statutes and rules guide the court and channel its discretion. For instance, in child custody cases, the court may appoint counsel for the child, who "shall represent the child's legal interests and zealously represent the child as any other client in an attorney-client relationship" and "shall not perform the role of a guardian *ad litem* or best interests attorney." Pa.R.C.P. 1915.11(a). Additionally, the custody court may choose to appoint a GAL "to represent the best interests of the child," and that GAL can be

1. The opinions presented here are corrected ones that replace those previously filed on March 28, 2017.

2. The Comment to Pa.R.J.C.P. 1154 provides:
   "Legal interests" denotes that an attorney is to express the child's wishes to the court regardless of whether the attorney agrees with the child's recommendation. "Best interests" denotes that a guardian *ad litem* is to express what the guardian *ad litem* believes is best for the child's care, protection, safety, and wholesome physical and mental development regardless of whether the child agrees.
   Pa.R.J.C.P. 1154 cmt.

3. *See In re Adoption of S.P.*, 616 Pa. 309, 47 A.3d 817, 820 (2012) (court must determine child's best interests in termination of parental rights); *In re R.I.S.*, 614 Pa. 275, 36 A.3d 567, 573 (2011) (child's best interests guide the court in a goal change); *In re Adoption of J.E.F.*, 587 Pa. 650, 902 A.2d 402, 412 (2006) (child's best interest is the "paramount consideration" in adoption); *Moore v. Moore*, 535 Pa. 18, 634 A.2d 163, 168 (1993) ("The primary concern in any custody case is the best interests of the child."); *In re B.L.L.*, 787 A.2d 1007, 1014 (Pa. Super. 2001) (discussing differences between custody and termination of parental rights and noting that, in termination of parental rights, child's legal interests are protected by representation of counsel).

either an attorney or mental health professional. Pa.R.C.P. 1915.11–2(a).

In dependency cases where the trial court is required to appoint a GAL, the GAL must be an attorney. 42 Pa.C.S. § 6311(a). The GAL is authorized by statute to represent both the child's legal interests and the child's best interests. *Id.* The GAL makes recommendations to the court regarding the child's placement and needs, and must advise the court of the child's wishes, if ascertainable. 42 Pa.C.S. § 6311(b). Further, the statute explicitly provides that any difference between the child's wishes and the GAL's recommendations "shall not be considered a conflict of interest." 42 Pa.C.S. § 6311(b)(9).[4]

By contrast to this statutory authorization for a GAL in dependency proceedings, Section 2313(a) of Title 23 prescribes a different scheme for the representation of children in termination of parental rights and adoption cases.

(a) Child.—The court shall appoint counsel to represent the child in an involuntary termination proceeding when the proceeding is being contested by one or both of the parents. The court may appoint counsel or a guardian *ad litem* to represent any child who has not reached the age of 18 years and is subject to any other proceeding under this part whenever it is in the best interests of the child. No attorney or law firm shall represent both the child and the adopting parent or parents.

23 Pa.C.S. § 2313(a).[5] No other statutory provision speaks to the appointment of counsel or a GAL in an involuntary termination of parental rights proceeding.

4. Although Section 6311(b)(9) specifically provides that the dependency GAL has no conflict of interest when the child's best interests and legal interests diverge, this Court has suggested that, in such a instances, the GAL should request appointment of legal counsel. Pa.R.J.C.P. 1154 cmt. Indeed, we have suspended Section 6311(b)(9) to the extent that it conflicts with the rule. *Id.* cmt.

5. The comment to the statute states:

This new provision requires the court to appoint counsel for a child when parental rights are being involuntarily terminated and, when necessary, to appoint a guardian *ad litem* for a child who has not reached the age of 18 years. The guardian *ad litem* concept is broad

With this legal framework in mind, we turn to the facts of today's case. J.L.P. ("Mother") and J.D.M. ("Father") are the parents of A.D.M. (born March 2007) and L.B.M. (born May 2011). On July 2, 2013, Franklin County Children and Youth Services ("CYS") conducted a home visit with Mother. The visit was prompted by a referral alleging that Mother was on the verge of becoming homeless. The next day, Mother contacted CYS seeking to place the children due to her unstable living conditions. At the time, Father was incarcerated. That same day, the trial court ordered the children to be placed with CYS. Soon after, the children were adjudicated dependent. As required by Section 6311, the trial court appointed a GAL for the children (Attorney Kristen Hamilton) at the beginning of the dependency proceedings.

On August 13, 2013, Mother pleaded guilty to possession of drug paraphernalia and was sentenced to twelve months of probation.[6] Thereafter, Mother was incarcerated, mostly due to probation violations, from July 5, 2013 to October 2, 2013, October 24, 2013 to November 6, 2013, December 12, 2013 to April 24, 2014, and May 5, 2014 to June 20, 2014.

On August 6, 2014, following Mother's repeated periods of incarceration, CYS filed a TPR petition. On November 25, 2014, after two hearings, the trial court issued findings of fact and a decree. The trial court declined to terminate Mother's parental rights, finding that Mother, while only recently released from jail, had obtained both housing and employment. Decree, 11/25/2014, at 8, 14–16.[7] Further, Mother had attended almost all of her available visits with the children and had

enough to allow the appointment of a person other than a lawyer. For example, a social worker could be appointed guardian *ad litem* within this provision; in an appropriate case a nonlawyer guardian *ad litem* could request appointment of counsel.
23 Pa.C.S. § 2313 Jt. St. Gov. Comm. cmt.

6. At the time of her plea, Mother already was on probation stemming from a 2012 conviction for possession of a small amount of marijuana.

7. The trial court terminated Father's parental rights. He appealed, and the Superior Court affirmed the trial court's decision. *In re Adoption of A.D.M.*, 94 MDA 2014, 2015 WL 7089589 (Pa. Super. June 15, 2015) (unpublished).

engaged and bonded with them. *Id.* at 8–9, 18. The court expressed "grave concerns" about the effect that severance of the relationship would have on A.D.M., who was "extremely close" with Mother. *Id.* at 19. The testimony reflected that A.D.M. "desperately want[ed] to be with his mother." Notes of Testimony ("N.T."), 10/3/2014, at 60; *see also* N.T., 10/24/2014, at 38.

Following the first TPR hearing, Mother made significant progress, and the children were scheduled to be reunited with her. However, while reunification was pending, L.B.M. returned from a weekend visit with Mother with bruises on his neck and chest. Although the bruises were suspected to be non-accidental, an investigation did not reveal their cause. Ultimately, the trial court delayed reunification in order to permit A.D.M. to finish the school year. Shortly thereafter, it was discovered that Mother had again violated her probation by living apart from her approved residence. Mother was reincarcerated. While in jail, Mother participated in visits with the children until her privileges were suspended after she tested positive for suboxone.

On August 4, 2015, the GAL filed a second TPR petition, citing both Mother's re-incarceration and the cancellation of her visitation privileges. On August 28, 2015, Mother filed a motion requesting the appointment of counsel for the children, citing Section 2313(a). Mother noted that the GAL's position "may be adverse to the [children's] position," and accordingly averred the necessity of independent counsel. Motion to Appoint Counsel for the Child, 8/28/2015, at 1.

On September 9, 2015, the trial court denied Mother's motion. In its order, the trial court chose simply to skip over the first sentence of Section 2313(a) (which mandates counsel in contested TPR cases) in favor of that provision's second sentence, which "gives this Court the discretion to appoint counsel or a GAL to represent any child who has not reached 18 years and is subject to *any other proceeding* under this part whenever it is in the best interests of the child." Order, 9/9/2015 (emphasis added). The trial court stated that, because the GAL had an established relationship with the children, the

GAL's representation would best suit the children's interests. *Id.*

The trial court held hearings on the TPR petition. At the start of the proceedings, the trial judge interviewed A.D.M. A.D.M. was equivocal about his desire to be reunited with Mother. He testified that he knew that Mother cared about him, but that he nonetheless was disappointed by her inability to maintain sobriety. He further stated that he probably would choose his foster family. N.T., 9/15/2015, at 10–11. A.D.M. expressed his desire for a final decision and his wish that, regardless of the outcome, he be allowed to maintain contact with both Mother (and her family) and his foster family. *Id.* at 17–18, 154. A.D.M.'s permanency worker testified that A.D.M.'s "first wish is always going to be with his mom." *Id.* at 161. The trial court recognized that A.D.M.'s bond with Mother was much stronger than L.B.M.'s, and that A.D.M. would be affected adversely by the termination. However, the trial court found that A.D.M. also had a strong bond with his foster parents, and that it was in A.D.M.'s best interests to sever the bond with Mother because his most important need was permanency. *See id.* at 17–18 (A.D.M. testifying that he just wanted a decision).

The trial court filed its findings of fact and decree on September 25, 2015. By that decree, the trial court terminated Mother's parental rights, finding that Mother had not remedied the conditions leading to the children's placement. In assessing the children's best interests, the court found that L.B.M.'s primary bond was with his foster parents, whom he considered to be his parents, although L.B.M. did have some bond with Mother. Decree, 9/25/2015, at 13.

Mother filed a notice of appeal and a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(a)(2)(ii) and (b). Mother alleged that the trial court erred in denying Mother's motion for the appointment of counsel, and that the trial court abused its discretion in terminating Mother's parental rights. We first address the appointment of counsel.

In support of its decision to deny Mother's motion, the trial court relied upon *In re K.M.*, 53 A.3d 781 (Pa. Super. 2012), in which the Superior Court held that Section 2313(a) did not require appointment of an attorney when a GAL, who was an attorney, had been appointed. Trial Court Opinion, 12/7/2015, at 22–24. In *K.M.*, the Superior Court addressed a TPR determination involving a three-year-old child who had never been in the parents' care. *K.M.*, 53 A.3d at 783–84. The trial court elected not to appoint counsel for the child pursuant to Section 2313(a), although a GAL, who was an attorney, had been appointed. *Id.* at 786. The mother appealed this decision. The Superior Court identified the purpose of the section as "protect[ing] the interests of the child. Implicit in this appointment of counsel is a recognition that the interests of the child may be very different than or diverge from the interests of the other parties . . . ." *Id.* at 787.

The Superior Court concluded that Section 2313(a)'s requirements were not clear and unambiguous as applied to circumstances when the appointed GAL was an attorney. Even though the second sentence of the statute did not apply to the case, the Superior Court opined that the use in that sentence of the disjunctive "counsel or guardian *ad litem*" indicated that the legislature deemed "it would be superfluous to appoint both counsel and an attorney serving as guardian *ad litem*" in most cases. *Id.* Further, the *K.M.* court relied upon the comment to Section 2313(a), noting that a GAL could be someone other than an attorney, to bolster its conclusion that the legislature did not intend for both an attorney-GAL and an attorney to be appointed. *Id.* at 787–88. Finally, the *K.M.* court did not discern anything in the statute that precluded the GAL from acting simultaneously as legal counsel. *Id.* at 788. Accordingly, the Superior Court affirmed the trial court's refusal to appoint counsel in addition to the GAL. *Id.*

Based upon *K.M.*'s reasoning, the trial court here decided that it was not required to appoint counsel other than the GAL.[8] A divided panel of the Superior Court affirmed upon

8. Mother filed a separate motion to appoint counsel for each child (and at each docket number). It is unclear to us whether Mother sought the

the basis of the trial court's opinion. *In re: Adoption of L.B.M.*, 1834 MDA 2015, 2016 WL 3080124 at \*6 (Pa. Super. May 31, 2016) (unpublished). In dissent, Judge Strassburger opined that *K.M.* was distinguishable because of A.D.M.'s age (eight at the time of the hearing) and because of A.D.M.'s expressed wish to return to Mother, a wish which conflicted with the GAL's position. *Id.* at \*33–34 (Strassburger, J., dissenting). Judge Strassburger also observed that Section 2313(a) "suggest[ed] that the legislature intended to differentiate between legal counsel and GAL in TPR proceedings." *Id.* at \*34.

Presently, Mother argues that *K.M.* was wrongly decided. Brief for Mother at 7. Mother contends that the second sentence of Section 2313(a), upon which the *K.M.* Court relied, does not apply to contested involuntary TPR hearings and is thus irrelevant to the case. If anything, Mother contends, the second sentence proves that the General Assembly recognized the distinct roles that a GAL and an attorney play. Accordingly, Mother argues that the use of the term counsel in the first sentence means a "client-directed" attorney who represents the child's legal interests and not a GAL who happens to be an attorney and seeks to vindicate the child's best interests. *Id.* at 8.[9]

The GAL argues that, although Section 2313(a)'s purpose is "to ensure that the needs and welfare of a child will be actively advanced by an advocate who owes loyalty only to the child," a GAL, representing the child's best interests, is able to advocate for the child. Brief for GAL at 22 (quoting *In re Adoption of G.K.T.*, 75 A.3d 521, 527 (Pa. Super. 2013)). The

appointment of one attorney for both children or the appointment of separate counsel for each child.

**9.** Three *amicus curiae* briefs were filed in support of Mother. *See* Brief of Juvenile Court Project; Brief of Community Justice Project; Brief of Juvenile Law Center, American Civil Liberties Union of Pennsylvania, Community Legal Services, Inc., National Association of Counsel for Children, National Coalition for a Civil Right to Counsel, and Pennsylvania Legal Aid Network. All three *amici* argue that Section 2313(a) is unambiguous, highlight differences between legal and best interests and the potential conflicts inherent therein, and provide policy justifications for providing counsel for the child.

GAL asserts that the age and development of a child may make it impossible for an attorney to be client-directed. The GAL contends that, since the GAL often has represented the child's best and legal interests pursuant to the Juvenile Rules in dependency, that dual role should continue through the termination process. *Id.* at 23.

CYS also argues that, because Section 6311 contemplates the GAL's advocacy on behalf of both the best interests and the legal interests of the child in dependency cases, it would be inefficient not to extend that dual role into and through TPR proceedings. Brief for CYS at 30–32.[10] CYS points to potential problems with the mandatory appointment of counsel in addition to a GAL, such as the children's age and capacity to form and express preferences and the possible need for separate attorneys for each of multiple children in a family when children's legal interests diverge. *Id.* at 32–33.

## II. Analysis

### A. Appointment of Counsel

■ Because our resolution of this issue necessarily requires us to interpret Section 2313(a), our standard of review is *de novo. Gilbert v. Synagro Cent., LLC,* 634 Pa. 651, 131 A.3d 1, 10 (2015).

The purpose of statutory interpretation is to ascertain the General Assembly's intent and give it effect. 1 Pa.C.S. § 1921(a). In discerning that intent, the court first resorts to the language of the statute itself. If the language of the statute clearly and unambiguously sets forth the legislative intent, it is the duty of the court to apply that intent to the case at hand and not look beyond the statutory language to

10. CYS suggests briefly that this appeal should be dismissed because the issue of counsel for the children was not raised in the first TPR proceedings and because Mother did not immediately appeal the denial of counsel. Brief for CYS at 18. CYS cites no rule or decisional law to support this contention. Because this request has not been developed, we will not review it. *See Commonwealth v. Spotz,* 610 Pa. 17, 18 A.3d 244, 262 n.9 (2011) ("This sub-claim has not been developed factually or legally, and it is not supported with citations to relevant decisional or statutory law . . . it is waived for lack of development.").

ascertain its meaning. *See* 1 Pa.C.S. § 1921(b) ("When the words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit."). "Relatedly, it is well established that resort to the rules of statutory construction is to be made only when there is an ambiguity in the provision." *Oliver v. City of Pittsburgh*, 608 Pa. 386, 11 A.3d 960, 965 (2011) (citations omitted).

*Mohamed v. Commonwealth, Dep't of Transp., Bureau of Motor Vehicles*, 615 Pa. 6, 40 A.3d 1186, 1193 (2012) (citation modified).

▮ The language of Section 2313(a) at issue in this contested TPR case reads, in pertinent part, "The court shall appoint counsel to represent the child . . . ." "The word 'shall' by definition is mandatory and it is generally applied as such." *Chanceford Aviation Props., L.L.P. v. Chanceford Twp. Bd. of Supervisors*, 592 Pa. 100, 923 A.2d 1099, 1104 (2007) (citation omitted). When a statute is unambiguous, "shall" must be construed as mandatory. *Id.* Here, the use of "shall" is unambiguous and hence, mandatory. The statutory language does not suggest anything other than the general meaning of the word. By contrast, the statute's second sentence uses the term "may" in connection with "any other proceeding" (*i.e.*, anything other than a contested TPR) evidencing the fact that our General Assembly knows well how to use non-mandatory language when it wishes to do so. The lawmakers codified a mandatory appointment of counsel for contested TPR cases, and, in the very next sentence, codified a discretionary provision for other proceedings.[11] There is no ambiguity in the statute. We may not manufacture one.

▮ As well, it bears noting that the recognized purpose of the statute is to ensure that the needs and welfare of the

11. My learned colleague Justice Mundy agrees that the first sentence of the statute controls this case, Mundy, J., dissenting, at 457–58, 161 A.3d at 189–90, but asserts that we are "mistakenly reading the first and second sentences in conjunction with each other." *Id.* at 458, 161 A.3d at 190. To the contrary, we acknowledge the second sentence only to

children involved are actively advanced.[12] To hold otherwise would afford courts the discretion to deny counsel to children involved in contested TPR proceedings, which not only would disserve the purpose of the statute, but also would contradict its express terms.

■ "Counsel" also is clear and unambiguous. The second sentence of the statute is instructive, inasmuch as it demonstrates that the legislature recognized and understood the difference between counsel and a GAL. In cases other than involuntary (*i.e.*, contested) TPRs, the General Assembly has instructed that either counsel or a GAL adequately can represent the child's interests. However, when a child's relationship with his or her birth family could be severed permanently and against the wishes of the parents, the legislature made the policy judgment, as is evident from the plain, unambiguous language of the statute, that a lawyer who represents the child's legal interests, and who is directed by the child, is a necessity. It is not our role to second-guess the policy choice made and expressed by the General Assembly. Nor is the legislative choice surprising; appointment of client-directed counsel optimizes the protection of the child's needs and welfare, which form the ultimate issue that the trial court must resolve before granting the TPR. Because the statute is clear and unambiguous, and because the application of the plain language gives effect to the General Assembly's intent,

demonstrate that the General Assembly recognized the difference between counsel and a GAL.

12. In *In re Adoption of N.A.G.*, 324 Pa.Super. 345, 471 A.2d 871 (1984), the Superior Court explained that the statutory requirement for appointment of counsel was the legislative answer to Justice Manderino's dissenting statements in *Matter of Kapcsos*, 468 Pa. 50, 360 A.2d 174 (1976) and *In re Thomas*, 484 Pa. 532, 399 A.2d 1063 (1979), that, because the legislature had not provided for the appointment of counsel for children, the courts must do so. *Id.* at 874 n.2. *See In re Adoption of Hess*, 386 Pa.Super. 301, 562 A.2d 1375, 1381 (1989) ("[t]he purpose of 2313(a) is to ensure that the needs and welfare of a child will be actively advanced by an advocate who owes loyalty *only* to the child.") (emphasis in original). Justice Mundy attempts to distinguish *Hess* by quoting its invocation of the child's best interests. Mundy, J., dissenting at 459–60, 161 A.3d at 191. This is wholly uncontroversial, but, respectfully, it misses the point. The issue here is not whether or not the child's best interests must be served (they must), but rather whether the General Assembly's mandate that counsel must be appointed for the child may be subverted or ignored (it may not).

we hold that Section 2313(a) requires the appointment of counsel who serves the child's legal interests in contested, involuntary TPR proceedings.[13]

## B. Service of GAL as Counsel

Having determined that the court must appoint counsel to represent the child's legal interest, we next consider whether a GAL may serve in that role. Because the GAL is familiar with the case and has represented the child's legal interests in the dependency case to the extent permitted by Pa.R.J.C.P. 1154 and Section 6311, there is some facial appeal in pressing (or allowing) the GAL into service as the child's counsel for the TPR proceedings.[14] Moreover, because the Adoption Act does not require the appointment of a GAL, it might be suggested that the dependency GAL would not have to act as GAL during the TPR and could serve solely as the child's lawyer in that latter proceeding, converting, as it were, to the "counsel" role specified by statute. But practical concerns militate against such dual service for the GAL. First, if the dependency GAL also was appointed as counsel for the TPR, all of

13. Justice Mundy contends that there is no reason to conclude that section 2313(a) requires representation of "the child's legal interests, and not best interests." Mundy, J., dissenting at 458, 161 A.3d at 190. However, the General Assembly chose to use the term "counsel." Had the General Assembly believed that an attorney representing both best and legal interests of the child would be sufficient to protect all of a child's interests, it certainly could have imported language into the Adoption Act similar to that utilized in the dependency statute, *see* 42 Pa.C.S. § 6111(b)(9), in which the legislature authorized a GAL to represent both species of interests. It did not do so, signaling its clear intention that section 2313(a) counsel must represent the child's legal interests.

14. The GAL only represents the child's legal interests to the extent permitted by rule and statute within the limited context of the dependency proceedings, and only to the extent that there is no conflict with the GAL's determination and advocacy of the child's best interests. In contested TPR proceedings, per the General Assembly's directive, no attorney is assigned to represent the child's best interests. Respectfully, my learned colleague Justice Baer's desire to "allow[ ] the child to have continuity of representation between the dependency and termination proceedings...," Baer, J., dissenting at 454, 161 A.3d at 188, obscures this distinction and conflates the roles of GAL and counsel for the child. In context, this "continuity" becomes a mechanism by which the child is judicially divested of the independent attorney that the General Assembly has mandated for that child.

those involved—the court, the lawyers, the parties, the agencies—would have to be clear about the distinction between the roles: to wit, that the GAL advocates for the child's best interests while counsel advocates for the child's legal interests. That change in roles, and the subtle yet important distinction between those roles, has the potential to breed confusion for the child as well as other parties. Second, the dependency proceedings generally remain ongoing when the TPR petition is filed and may well continue, as they indeed did here, in the event that the petition is denied. To permit the dependency GAL to serve also as the TPR counsel while proceedings in each matter are ongoing increases the risk of confusion and may force the attorney to take conflicting stances in the proceedings depending on the role being performed at the time. These concerns argue against the GAL serving additionally in the distinct role of TPR counsel.

We recognize that providing a new attorney as counsel for the child carries a cost. In addition to an appointed counsel's fee, there may be delays while counsel prepares for the TPR proceedings and interviews the child and any other parties or witnesses. In some cases, the child may be too young to express his or her wishes. In other cases, as CYS notes, an attorney, guided by Pa.R.P.C. 1.7 (Conflicts of Interest), may determine that he or she ethically cannot represent multiple children in a family because the children's legal interests diverge. However, the language of Section 2313(a) is clear. The General Assembly has made the policy decision that these are the costs of ensuring that a child is represented adequately during a contested, involuntary TPR proceeding. Recognizing the legislative will, and in view of the risks posed by dual representation with conflicting obligations, the dependency GAL should not be employed as the child's counsel in TPR proceedings.[15]

15. Justice Baer suggests that the dependency GAL, bound by Pa.R.P.C. 1.7, could continue to represent the child in the TPR hearing because the dependency GAL would be required to seek appointment of counsel should there be a conflict of interest. Baer, J., dissenting, at 454, 161 A.3d at 188. This essentially would make the GAL the arbiter of the child's right to counsel. The right belongs to the child. That child

Here, the trial court denied Mother's motion to appoint counsel, citing the inapplicable second sentence of Section 2313(a) and finding that the GAL could represent the children's interests. The court erred in failing to appoint counsel for the children. It was clear that the GAL was representing the children's best interests and not their legal interests. *See* N.T., 10/24/2014, at 59 (GAL at closing of first TPR proceeding stating, "So I can't say that I don't appreciate [A.D.M.'s] position [that he wants to return to Mother]. But I don't believe at this point he understands what's best for him."). Section 2313(a) requires counsel to advocate on behalf of the children's legal interests. Counsel was not appointed here. Therefore, the Superior Court erred in affirming the trial court.

## C. Treatment of Error

Having found that the trial court erred, we must next determine the effect of that error. The GAL suggests that, if error, the failure to appoint counsel was harmless. Brief for GAL at 43–44. CYS concurs. Brief for CYS at 36. Mother does not address the issue directly. She asserts merely that the error justifies a new hearing. Brief for Mother at 15.

The most developed treatment of the issue lies in the *amicus curiae* brief submitted jointly by the Juvenile Law Center, the American Civil Liberties Union of Pennsylvania, Community Legal Services, Inc., the National Association of Counsel for Children, the National Coalition for a Civil Right to Counsel, and the Pennsylvania Legal Aid Network (hereinafter, collectively, "Juvenile Law Center"). The Juvenile Law Center notes that, in criminal proceedings, denial of counsel is deemed a structural error, requiring reversal without the need

generally is not in a position to assert, much less to advocate, the presence of a conflict of interest. By mandating counsel who represents the child's legal interest in TPR proceedings, the General Assembly sought to vindicate and protect the child's right to counsel. Justice Baer maintains that "no universal disqualifying impediment exists to prevent a dependency proceeding GAL Attorney" from switching hats in order to represent a child's legal interests at a TPR hearing. But such an impediment does in fact exist, and we are not authorized to wish it away. It is Section 2313(a) of the Adoption Act.

to demonstrate prejudice. *Id.* at 27–28. The Juvenile Law Center asserts that courts generally have extended other criminal law protections to TPR cases because of the importance of the right involved in termination, and maintains that we should deem the failure to appoint counsel a structural error. *Id.* at 28–29. The rationale for structural error's applicability to criminal cases applies equally to TPR cases, according to the Juvenile Law Center. To wit, it is impossible to determine the effect that counsel who was not present would have had and to attempt to gauge the harmfulness of the failure to appoint counsel.[16] To do so would be an exercise in speculation. *Id.* at 30–31. Further, the absence of counsel "calls into question the very structural integrity of the fact-finding process." *Id.* at 31–32 (quoting *In re J.M.B.*, 296 Ga.App. 786, 676 S.E.2d 9, 12 (2009)). For these reasons, the Juvenile Law Center advocates that a harmless error approach is untenable.

A structural error is defined as one that affects "the framework within which the trial proceeds, rather than simply an error in the trial process itself." *Commonwealth v. Baroni*, 573 Pa. 589, 827 A.2d 419, 420 (2003) (quoting *Arizona v. Fulminante*, 499 U.S. 279, 310, 111 S.Ct. 1246, 113 L.Ed.2d 302 (1991)). Structural errors are not subject to harmless error analysis. *Id.* Generally, denial of counsel is a structural error, *see Commonwealth v. Martin*, 607 Pa. 165, 5 A.3d 177, 192 (2010); although such error usually stems from deprivation of a constitutional right to counsel. Here, by contrast, the right to counsel is statutory. Nonetheless, we do not find that distinction to be determinative. The same concerns are evident

16. While he agrees that failure to appoint counsel is a structural error, Baer, J. dissenting, at 454, 161 A.3d at 188, Justice Baer nonetheless suggests that remand is unnecessary in this case because "the record does not support Mother's assertion that a conflict of interest existed between A.D.M.'s legal and best interests during the second termination proceeding." *Id.* at 455–56, 161 A.3d at 189. We cannot know how the record was impoverished by the failure of the trial court to comply with the statute's requirements that A.D.M. be provided with counsel charged with representing his legal interests. Counsel representing A.D.M.'s legal interests may have developed testimony from A.D.M. that was less equivocal about his wishes. It is this very speculation that shows the impossibility of determining *post hoc* the effect of the failure to appoint counsel and that compels the conclusion that this failure was structural error.

regardless of the derivation of the right. Whether the right to counsel is conferred by constitution or statute, the right having been conferred must be protected.

In criminal and TPR cases alike, critical rights are at stake. With respect to the former, the framers of our Constitutions, and the courts interpreting those charters, have determined that counsel was required to ensure that liberty interests and process rights are protected. With respect to the latter, our General Assembly has decided that counsel for the child is required because of the primacy of children's welfare, the fundamental nature of the parent-child relationship and the permanency of termination. The legislature has codified a process that affords a full and fair opportunity for all of the affected parties to be heard and to participate in a TPR proceeding. The denial of mandated counsel compromises the framework of the proceedings and constitutes a structural error. Further, as suggested by the Juvenile Law Center, harmless error analysis would require speculation after the fact to evaluate the effect of the lack of appointed counsel, effectively requiring proof of a negative. For all of these reasons, we hold that the failure to appoint counsel for a child involved in a contested, involuntary termination of parental rights proceeding is a structural error and is not subject to harmless error analysis.

Because the trial court erred in failing to appoint counsel for the children, and because that error is structural, we remand for a new TPR proceeding following the appointment of counsel. To the extent that *K.M.* does not align with the majority portion of today's opinion, that decision was erroneous and is overruled. Because of the remand, we need not reach, and we express no opinion regarding, Mother's challenge to the trial court's finding on the merits that Mother's parental rights should be terminated.

Justices Donohue and Dougherty join the opinion.

Chief Justice Saylor joins Part I, Part II(A) and Part II(C) of the opinion and authors a concurring opinion.

Justice Todd joins Part I, Part II(A) and Part II(C) of the opinion and joins the concurring opinion authored by Chief Justice Saylor.

Justice Baer files a dissenting opinion in which Justice Mundy joins.

Justice Mundy files a dissenting opinion in which Justice Baer joins.

CHIEF JUSTICE SAYLOR, concurring

I join Parts I and II(A) and (C) of the main opinion. However, I respectfully disagree with the plurality decision, in Part II(B), that a guardian *ad litem* may never serve as counsel, as I believe such a rigid rule is not required by either the language of the statute or any other considerations relating to counsel's role in legal proceedings.

Although the main opinion indicates that "the language of Section 2313(a) ... clear[ly]" supports its holding in this respect, Opinion, at 443, 161 A.3d at 181, in my view, that provision reflects only that a court must appoint counsel in termination proceedings; it is silent on who may or may not serve in that role. A contextual reading of the passage is similarly not dispositive. The plurality aptly explains that the statutory scheme evinces the Legislature's intent to distinguish between the respective roles of counsel, whose duty is to further the child's legal interests, and a guardian *ad litem*, whose obligation is to advance the child's best interests. It does not follow, however, that the General Assembly intended to categorically proscribe a guardian *ad litem* from serving as counsel.[1]

In my view, the propriety of permitting the same individual to serve in both capacities should be determined on a case-by-

1. In this regard, I agree with Justice Mundy that the second sentence of Section 2313(a), concerning discretionary appointment of a guardian *ad litem*, should not be read so as to limit the first sentence, relating to mandatory appointment of counsel. *See* Dissenting Opinion, at 457–58, 161 A.3d at 189–90. However, because I find resonance in the view that the use of the word "counsel" necessarily implies an attorney who is bound to represent a client's legal interests, I do not find the Legislature's failure to explicitly distinguish between a child's legal interests

case basis, subject to the familiar and well-settled conflict of interest analysis. Thus, where zealous representation is made impossible because of an attorney's duties as guardian *ad litem*—or, for that matter, any other reason—the court must refrain from making the appointment and should find a suitable candidate. Conversely, in the absence of an actual or potential conflict between a child's legal and best interests, I see no reason why a guardian *ad litem* may not also serve as counsel. There are multiple scenarios in which a child's legal and best interests may be indistinguishable, including, most notably, cases involving children who are too young to express their wishes. In such circumstances, mandating the appointment of separate counsel seems superfluous and potentially wasteful.[2]

Here, as the main opinion explains, in permitting the termination to proceed with the guardian *ad litem* as the only attorney representing the children, the trial court understood the appointment of counsel to be optional, rather than mandatory. Accordingly, as it did not recognize the discrete functions of counsel and guardians *ad litem*, it could not have conducted the requisite conflict of interest analysis. As such, I agree with the characterization of the trial court's order as a failure to appoint counsel.

In sum, while I agree that the court must appoint counsel who will advocate for the child's legal interests, I find a *per se*

and best interests to be relevant, let alone dispositive. *See* Opinion, at 442 n.13, 161 A.3d at 180 n.13.

**2.** Furthermore, inasmuch as I agree with the main opinion that the right to counsel in this setting must be as scrupulously protected as the right to counsel in criminal cases, for purposes of assessing the resulting error, I would not distinguish between a court's failure to appoint counsel and the appointment of conflicted counsel. *See, e.g., Commonwealth v. Hawkins*, 567 Pa. 310, 320, 787 A.2d 292, 297–98 (2001); *accord Commonwealth v. King*, 618 Pa. 405, 425, 57 A.3d 607, 619 (2012) (observing that, in assessing whether the conflict of interest resulted in a deprivation of the right to counsel under the Sixth Amendment, "the [United States Supreme] Court's concern centers primarily on the potential for an attorney to alter his trial strategy due to extrinsic considerations stemming from other loyalties, thereby distorting counsel's strategic or tactical decisions in a manner that would not occur if counsel's sole loyalty were to the defendant" (citing *Wood v. Georgia*, 450 U.S. 261, 272, 101 S.Ct. 1097, 1103–04 (1981))).

prohibition on permitting a guardian *ad litem* to serve as counsel to be overly restrictive.

Justice Todd joins this concurring opinion.

JUSTICE BAER, dissenting

I join Justice Mundy's dissenting opinion. I write separately to explain my reasoning and to set forth a recommended course of action for trial courts.

As has been noted, this case requires our interpretation of Section 2313(a) of the Adoption Act:

§ 2313. Representation

(a) Child.—The court shall appoint counsel to represent the child in an involuntary termination proceeding when the proceeding is being contested by one or both of the parents. The court may appoint counsel or a guardian ad litem to represent any child who has not reached the age of 18 years and is subject to any other proceeding under this part whenever it is in the best interests of the child. No attorney or law firm shall represent both the child and the adopting parent or parents.

23 Pa.C.S. § 2313(a). I agree with my colleagues that the first sentence of Section 2313(a) requires a trial court to appoint counsel to represent the child in a contested termination proceeding. The question raised by this case, however, is whether a trial court must appoint a separate attorney as counsel for the termination proceeding or whether an attorney then serving as the child's guardian *ad litem* (GAL) in the related dependency proceedings (hereinafter, for clarity, "GAL Attorney") may continue to serve in a dual capacity representing both the best interests and the legal interests of the child, assuming the interests do not conflict.[1]

Notably, the first sentence of Section 2313(a) is silent as to whether the appointed counsel may be the same individual who serves as the GAL Attorney in the dependency proceedings. I agree with Justice Mundy that the second sentence of

1. The representation provisions allowing for a GAL Attorney to serve in a dual capacity in dependency actions are set forth *infra* at 450–51, 161 A.3d at 185–86.

Section 2313 does not answer this question as it instead addresses the child's representation in "any other proceedings" under the Adoption Act other than a contested termination proceeding, which is addressed by the first sentence of the section.

Section 2313(a)'s differentiation of the representation requirements is understandable given the significance to the child and finality of the termination of parental rights. While the General Assembly mandates in the first sentence of Section 2313(a) that a child be represented by counsel in a contested termination proceeding, the second sentence of the provision allows, but does not require, representation by either counsel or a GAL (who does not have to be an attorney under the Adoption Act) in other proceedings such as uncontested adoption proceedings. The fact that a GAL may be appointed in other proceedings, however, does not address whether a GAL Attorney may satisfy the requirement that counsel be appointed for purposes of the first sentence addressing a contested termination of parental rights proceeding.

While the Adoption Act does not speak to whether a GAL Attorney can serve as the appointed counsel under Section 2313(a) in contested termination proceedings, Section 6311 of the Juvenile Act specifically provides for a GAL Attorney to serve in a dual capacity in dependency proceedings. 42 Pa.C.S. § 6311. For specified categories of dependent children, Section 6311(a) requires that the court "appoint a guardian ad litem to represent the legal interests and the best interests of the child," and mandates that "[t]he guardian ad litem must be an attorney at law." 42 Pa.C.S. § 6311(a).[2] Subsection 6311(b) requires that the GAL Attorney represent "the legal interests

2. In full, Section 6311(a) provides:
   (a) Appointment.—When a proceeding, including a master's hearing, has been initiated alleging that the child is a dependent child under paragraph (1), (2), (3), (4) or (10) of the definition of "dependent child" in section 6302 (relating to definitions), the court shall appoint a guardian ad litem to represent the legal interests and the best interests of the child. The guardian ad litem must be an attorney at law.
   42 Pa.C.S. § 6311(a).

and the best interests of the child at every stage of the proceedings" and sets forth the duties of the GAL Attorney, which include traditional responsibilities of legal counsel.[3]

Significantly, Subparagraph 6311(b)(9), in its original form, imposes on the GAL Attorney the following duty in regard to the child's legal interest:

(9) Advise the court of the child's wishes to the extent that they can be ascertained and present to the court whatever evidence exists to support the child's wishes. When appropriate because of the age or mental and emotional condition of the child, determine to the fullest extent possible the wishes of the child and communicate this information to the court. *A difference between the child's wishes under this paragraph and the recommendations under paragraph (7) [addressing recommendations for the child's placement and*

3. In relevant part, Section 6311(b) imposes the following duties upon the GAL Attorney that invoke standard duties of legal counsel:

(b) Powers and duties.—The guardian ad litem shall be charged with representation of the legal interests and the best interests of the child at every stage of the proceedings and shall do all of the following:

(1) Meet with the child as soon as possible following appointment pursuant to section 6337 (relating to right to counsel) and on a regular basis thereafter in a manner appropriate to the child's age and maturity.

\* \* \* \*

(5) Interview potential witnesses, including the child's parents, caretakers and foster parents, examine and cross-examine witnesses and present witnesses and evidence necessary to protect the best interests of the child.

\* \* \* \*

(7) Make specific recommendations to the court relating to the appropriateness and safety of the child's placement and services necessary to address the child's needs and safety.

\* \* \* \*

(9) Advise the court of the child's wishes to the extent that they can be ascertained and present to the court whatever evidence exists to support the child's wishes. When appropriate because of the age or mental and emotional condition of the child, determine to the fullest extent possible the wishes of the child and communicate this information to the court. A difference between the child's wishes under this paragraph and the recommendations under paragraph (7) shall not be considered a conflict of interest for the guardian ad litem.

42 Pa.C.S. § 6311.

*necessary services] shall not be considered a conflict of interest for the guardian ad litem.*

42 Pa.C.S. § 6311 (emphasis added).

Notably, this Court suspended the italicized last sentence of Section 6311(b)(9) countenancing a conflict of interest between the child's wishes and the GAL Attorney's best interest recommendations pursuant to Pennsylvania Rule of Juvenile Court Procedure 1800(3).[4] Rule 1800(3) suspended Section 6311(b)(9) to the extent it conflicted with Pa.R.J.C.P. 1151 and 1154. Rule 1151 instructs courts when to appoint a GAL Attorney and when to appoint counsel. As relevant to this case, a GAL Attorney should be assigned when a child "is without proper parental care or control, subsistence, education as required by law, or other care or control necessary for the physical, mental or emotional health, or morals," a classification which corresponds to one of the definitions of a dependent child under the Juvenile Act. Pa.R.J.C.P. 1151(A)(1); 42 Pa. C.S. § 6302 ("Dependent Child")(1). In turn, Rule 1154 provides the duties of a GAL Attorney, which mirror the duties established by Section 6311 of the Juvenile Act, absent the suspended last sentence of subparagraph 9, addressing potential conflicts of interest for the GAL Attorney.

In place of the final sentence, the comment to Rule 1154 provides, "If there is a conflict of interest between the duties of the guardian *ad litem* pursuant to paragraphs (7) and (9), the guardian *ad litem* for the child may move the court for appointment as legal counsel and assignment of a separate

4. Rule 1800(3) provides as follows:
(3) The Act of July 9, 1976, P.L. 586, No. 142, § 2, 42 Pa.C.S. § 6311(b)(9), which provide that there is not a conflict of interest for the guardian *ad litem* in communicating the child's wishes and the recommendation relating to the appropriateness and safety of the child's placement and services necessary to address the child's needs and safety, is suspended only insofar as the Act is inconsistent with Rules 1151 and 1154, which allows for appointment of separate legal counsel and a guardian *ad litem* when the guardian *ad litem* determines there is a conflict of interest between the child's legal interest and best interest.
Pa.R.J.C.P. 1800(3).

guardian *ad litem* ....." Pa.R.J.C.P. 1154, cmt.[5] It further explains that "If there is not a conflict of interest, the guardian *ad litem* represents the legal interests and best interests of the child at every stage of the proceedings. 42 Pa.C.S. § 6311(b)." Pa.R.J.C.P. 1154, cmt. Thus, in dependency proceedings under the Juvenile Act, a GAL Attorney represents both the best interests and legal interests of the child absent a conflict of interest. If there is a conflict of interest, the child must have a GAL representing her best interests and separate legal counsel representing legal interests. This provision is consistent with Pennsylvania's Rules of Professional Conduct which forbid an attorney from representing a client "if the representation involves a concurrent conflict of interest." Pa. R.P.C. 1.7(a) (entitled "Conflicts of Interest: Current Clients").

I see no obstacle to this system of representation being applied for purposes of a child's representation in contested termination proceedings under the first sentence of Section 2313(a) of the Adoption Act. Indeed, as contested termination proceedings generally arise from dependency proceedings, I conclude that the statutory representation provisions for children subject to both proceedings should be read *in pari materia*. 1 Pa.C.S. § 1932 (providing that statutes that "relate to the same persons or things or to the same class of persons

---

5. The comment to Rule 1154 provides in relevant part as follows:

*Comment:* If there is a conflict of interest between the duties of the guardian *ad litem* pursuant to paragraphs (7) and (9), the guardian *ad litem* for the child may move the court for appointment as legal counsel and assignment of a separate guardian *ad litem* when, for example, the information that the guardian *ad litem* possesses gives rise to the conflict and can be used to the detriment of the child. If there is not a conflict of interest, the guardian *ad litem* represents the legal interests and best interests of the child at every stage of the proceedings. 42 Pa.C.S. § 6311(b). To the extent 42 Pa.C.S. § 6311(b)(9) is inconsistent with this rule, it is suspended. *See* Rules 1151 and 1800. *See also* Pa.R.P.C. 1.7 and 1.8.

"Legal interests" denotes that an attorney is to express the child's wishes to the court regardless of whether the attorney agrees with the child's recommendation. "Best interests" denotes that a guardian *ad litem* is to express what the guardian *ad litem* believes is best for the child's care, protection, safety, and wholesome physical and mental development regardless of whether the child agrees.

Pa.R.J.C.P. 1154, cmt.

or things" "shall be construed together, if possible, as one statute").

Indeed, reading the representation provisions consistently allows the child to have continuity of representation between the dependency and termination proceedings.[6] As in the dependency proceedings, if a conflict of interest exists between the child's best and legal interests, the GAL Attorney, who is subject to the Rules of Professional Conduct, must move for the appointment of a separate individual to allow separate representation of the best interests and legal interests. See Pa.R.P.C. 1.7. As I conclude that no universal disqualifying impediment exists to prevent a dependency proceeding GAL Attorney from continuing to represent the child's legal and best interests in a termination proceeding, I concur with Justice Mundy in holding that the trial court did not err in refusing to appoint a new individual as counsel.

Nevertheless, I am troubled that an affirmance of the trial court's denial of the motion to appoint counsel could be misconstrued as not requiring the appointment of counsel in contested termination proceedings. Indeed, I agree that lack of counsel for the child would result in a structural error in a termination proceeding. As such, it would be a better practice for courts in every contested termination proceeding to place an order on the record formalizing the appointment of counsel to highlight for all parties the responsibility for the representation of the child's legal interests, while simultaneously permitting that attorney to serve as the child's GAL so long as there is no conflict of interest between the child's legal and best interests.

6. The plurality opinion suggests that confusion could result if the GAL Attorney from the dependency proceedings was appointed to advocate for the child's legal interests in the termination proceedings. Plurality Op. at 442–43, 161 A.3d at 181. Respectfully, I fail to see how confusion would result given that the GAL Attorney has been representing both the legal interests and the best interests of the child throughout the dependency proceedings. Rather than confusion, allowing the *status quo* representation to continue would provide continuity for the child, especially because the dependency proceedings, as noted by the plurality opinion, may overlap with the termination proceedings. If a conflict of interest exists, the GAL Attorney would be obligated to seek appointment of a separate individual as occurs under the dependency procedures.

As applied to this case, it would have been preferable for the trial court to have formally appointed the GAL as the child's counsel for the termination proceedings and cited the first (as opposed to second) sentence of Section 2313(a). I refuse, however, to promote form over substance and deny permanency to A.D.M. based upon the trial court's technically improper order denying the appointment of counsel. Instead, I conclude that the trial court was correct in denying Mother's motion because Mother sought not the appointment of counsel generally, but instead requested the appointment of "independent counsel." Motion to Appoint Counsel for the Child [A.D.M.]. As I have stated above, Section 2313(a), in my view, does not mandate the appointment of counsel distinct from the GAL Attorney serving in the same dual capacity in the dependency proceedings, absent a conflict of interest between the child's best interests and legal interests.

Moreover, the record does not support Mother's assertion that a conflict of interest existed between A.D.M.'s legal and best interests during the second termination proceeding, which would have required the GAL to move for the appointment of separate counsel. A conflict of interest may have existed during the first termination proceeding in 2014 when the GAL recommended that termination was in A.D.M.'s best interest in contrast to A.D.M.'s articulated desire to be reunited with Mother. However, by the time of the second termination proceeding, A.D.M. expressed a desire to live with his foster parents. He first noted that it was "a really hard decision because they both care about me. But my mom doesn't act like it." N.T., 9/15/2015, at 10. He then stated that he would "probably go with" his foster parents because he felt "like [his] mom's not safe because she could probably do drugs again," which he recognized would result in yet another removal of him and his younger brother. Id. at 11. In contrast he noted that living with his foster parents "would be pretty good because they're a good family and they take good care of me." Id. at 17. He also clearly expressed his desire for permanency, noting that he had been "in foster care for a really long time [and had] been switching around with foster families a lot." Id.

Understandably, he hoped that if he was placed with his foster parents that his mom's "family could connect with the [foster family], the whole entire family." [7] Id. at 18. Thus, I agree with the trial court that A.D.M.'s legal interests were consistent with the GAL's view of his best interests during the relevant second termination proceeding.

Therefore, I respectfully dissent from the remand and would affirm the termination of Mother's parental rights.

Justice Mundy joins this dissenting opinion.

JUSTICE MUNDY, dissenting

I agree with the main opinion's conclusion that pursuant to 23 Pa.C.S. § 2313(a), appointment of counsel is mandatory for children involved in contested involuntary termination of parental rights proceedings. However, because I believe an attorney guardian *ad litem* (GAL) appointed to represent a child in these proceedings satisfies Section 2313(a)'s mandate, I dissent.

As the main opinion states, this case presents an issue of statutory interpretation and is governed by the relevant legal standards set forth in the main opinion. Opinion, at 439–40, 161 A.3d at 178–80. Further, it is undisputed that the mandatory language of the first sentence of Section 2313(a) requires appointment of counsel in contested involuntary termination proceedings.

### § 2313. Representation

**(a) Child.—The court shall appoint counsel to represent the child in an involuntary termination proceeding when the proceeding is being contested by one or both of the parents.** The court may appoint counsel or a guardian ad litem to represent any child who has not reached the age of 18 years and is subject to any other proceeding under this part whenever it is in the best interests of the child. No

7. Likewise, he expressed a wish to maintain contact with his foster family if placed with his mother.

attorney or law firm shall represent both the child and the adopting parent or parents.

23 Pa.C.S. § 2313(a) (emphasis added).

In my view, the first and second sentences of Section 2313(a) address two entirely different situations. As the text of the statute states, the second sentence of Section 2313(a) provides that the court may appoint counsel or a GAL in "any other proceeding" under "this part," this part meaning, the Adoption Act, 23 Pa.C.S. §§ 2101–2938. The Adoption Act encompasses voluntary relinquishment proceedings, involuntary termination proceedings—contested and uncontested, as well as adoption proceedings. Thus, Section 2313(a) governs representation under all Adoption Act proceedings, and the second sentence of Section 2313(a) has no effect on the meaning of the first sentence, stating counsel shall be appointed to represent a child in a contested involuntary termination proceeding.

The main opinion notes that the "trial court chose simply to skip over the first sentence of Section 2313(a) (which mandates counsel in contested [termination of parental rights] cases) in favor of that provision's second sentence which 'gives this Court the discretion to appoint counsel or a GAL to represent any child who has not reached 18 years and is subject to *any other proceeding* under this part whenever it is in the best interests of the child.' " Opinion, at 435, 161 A.3d at 176, *quoting* Trial Court Order, 9/9/15. Conflating the two sentences, the trial court relied on the second sentence of Section 2313(a) in support of its appointment of the GAL attorney. Nevertheless, as the trial court noted in denying Mother's motion for appointment of new counsel, the children had an established relationship with the GAL attorney, and her continued representation would best suit the needs of the children. Id. In light of the statutory interpretation discussion above, I fail to see how this contested involuntary termination proceeding is "any other proceeding," or how the GAL attorney appointed to represent the children is not "mandated counsel" in accordance with the first sentence. Thus, the trial court's continued appointment of the GAL attorney from the dependency case satisfied Section 2313(a)'s mandate.

I believe that the main opinion is mistakenly reading the first and second sentences in conjunction with each other, which has the effect of changing the meaning of the first sentence. The General Assembly chose in the second sentence to say "counsel or a [GAL]," noting in the comment that the GAL need not be an attorney. Thus, in all "other proceedings" under the Adoption Act, the General Assembly contemplated the possibility that a child might not be represented by counsel at all. Contrary to the main opinion's suggestion, the inclusion of an option to solely appoint a non-attorney GAL in other proceedings does not necessarily render the appointment of a GAL attorney a violation of the Section 2313(a)'s appointment of counsel clause. Our review in this case is limited to whether appointment of a GAL attorney satisfies Section 2313(a)'s mandate that counsel be appointed in contested involuntary termination of parental rights proceedings. I conclude it does.

I also am troubled by the plurality's conclusion that "the plain language of Section 2313(a) requires the trial court to appoint a separate, independent attorney to represent a child's **legal interests** in a [termination of parental rights] case." Opinion, at 431–32, 161 A.3d at 174–75 (emphasis added). The main opinion adopts the position that Section 2313(a) specified that appointed counsel would solely be representing the child's legal interests, and not best interests, without citation to where the term "legal" was added to Section 2313(a). I do not disagree with the main opinion's citation to Pennsylvania Rules of Juvenile Court regarding the role of a GAL attorney in dependency hearings, or the distinct legal and best interests which they must represent. *See* Opinion, at 433, 161 A.3d at 175, *citing* Pa.R.J.C.P. 1154. However, even in the dependency context, Rule 1154 specifically anticipates the potential for a conflict between a child's wishes—the child's legal interest, and a child's best interests, and that in such a case separate legal counsel in addition to the GAL attorney may be appointed. Pa.R.J.C.P. 1154 cmt.[1] This does not necessitate that a

---

1. The comment to Rule 1154 notes "[i]f there is not a conflict of interest, the guardian *ad litem* represents the legal and best interests of the child[.]" Pa.R.J.C.P. 1154 cmt.

GAL attorney can only advocate a child's best interest, or that the General Assembly intended to preclude a GAL attorney from representing a child under Section 2313. Nor does it mandate two attorneys must be appointed in the absence of a conflict of interest on the part of the GAL attorney. The statute as drafted solely provides that "the court shall appoint counsel." 23 Pa.C.S. 2313(a). The appointment of a GAL attorney certainly satisfies this requirement.

Further, as the main opinion concedes, Section 2313(a) is the only requirement the General Assembly imposed, and "no other statutory provision speaks to the appointment of counsel or a GAL in an involuntary termination of parental rights proceeding." Opinion, at 433, 161 A.3d at 175. The main opinion correctly notes that in custody cases when counsel is appointed, counsel "shall represent the child's legal interests and zealously represent the child as any other client in an attorney-client relationship[, and] ... shall not perform the role of guardian *ad litem* or best interests attorney." Pa. R.C.P. 1915.11(a). And that on the contrary, in dependency cases, a GAL attorney "shall be charged with representation of the legal interests and the best interests of the child at every stage of the proceedings." 42 Pa.C.S. § 6311(b). The first sentence of Section 2313(a) does not differentiate between representing the child's best interests or legal interests in mandating the appointment of counsel in contested termination of parental rights cases.[2] It is not the duty or role of this Court to inject such differentiation into Section 2313(a) that is not derived from the statutory language.

In support of its position that a Section 2313(a) attorney should only represent the child's legal interests, the main opinion quotes *In re Adoption of Hess*, 562 A.2d 1375 (Pa. Super. 1989) for the proposition that "[t]he purpose of 2313(a) is to ensure that the needs and welfare of a child will be actively advanced by an advocate who owes loyalty *only* to the

2. I maintain the second sentence does not pertain to contested involuntary termination of parental rights proceedings.

child." Opinion, at 441 n.12, 161 A.3d at 180 n.12, *quoting id.* at 1381 (emphasis in original). The next sentence of *Hess*, however, makes clear that although the court's intent was to appoint counsel that owed a loyalty to the child, it did not intend to limit counsel to advocate solely for the child's legal interests. Indeed, the court was very much concerned with the child's best interests and stated:

> Where, as in the present case, there are competing allegations of the best interests of the child, and where the court, without conducting a hearing by which it could receive evidence so that it could make a fully informed determination of the *BEST* interests of the child, summarily dispenses with one of the competing allegations of the child's best interests, and where no counsel has been appointed to represent *exclusively* the child's interests, we cannot conclude that the *BEST* interests of the child have necessarily been advocated and determined.

*Hess*, 562 A.2d at 1381 (emphasis in original).

The main opinion also disapproves of the Superior Court's reliance on *In re K.M.*, 53 A.3d 781 (Pa. Super. 2012), overruling the pertinent holding in that case. Therein, the Superior Court concluded the language of Section 2313(a) was not clear and unambiguous as applied to circumstances where the GAL was an appointed attorney. Opinion, at 437, 161 A.3d at 177–78. Like the main opinion in this case, the *K.M.* court also focused on the meaning of the second sentence of the statute in relation to the first sentence, but nevertheless concluded that the statute did not preclude a GAL attorney from serving as legal counsel for the children. Upon reflection, I believe *K.M.*'s focus on the second sentence was unnecessary. Ultimately, however, the outcome of *K.M.* was correct as the appointment of a second attorney when the child was represented by a GAL attorney would be superfluous.

Based on my conclusions regarding the statutory interpretation of Section 2313, it is unnecessary to further elaborate on

the ability of a GAL attorney to represent a child in a contested termination of parental rights matter. Nevertheless, there are two points I wish to make. First, as noted, the appointment of additional counsel following the appointment of a GAL attorney is superfluous. In this matter the GAL attorney represented the children's interests throughout dependency proceedings. Under the main opinion's interpretation, in addition to the GAL attorney, it would have been necessary to appoint an attorney for the first termination hearing when CYS petitioned to involuntarily terminate the parental rights of both Mother and Father. At that hearing, Father's rights were involuntarily terminated, but Mother's rights were not. Once the petition to involuntarily terminate Mother's rights was denied, the Section 2313(a) appointed legal counsel would no longer be involved in the matter, and the GAL attorney would resume her sole advocacy on behalf of the children during the permanency proceedings. At the commencement of the second termination hearing, it would again be necessary to appoint Section 2313 legal counsel, possibly the same attorney that represented the children at the first termination hearing, perhaps a new attorney. This legal counsel would represent the children alongside the GAL attorney throughout the termination hearing. It is my view such dual representation is both unnecessary and taxing to the system, and undermines continuity of representation for the children.

Second, the only concern articulated by the plurality regarding the appointment of a GAL attorney appears to be a conflict of interest between advocating the child's best interests and legal interests simultaneously. Opinion, at 442–43, 161 A.3d at 181. As previously noted, the GAL attorney must do this in the dependency actions, and Rule 1154 provides a procedure for appointing separate legal counsel from the GAL attorney if a conflict of interest between the child's wishes and best interests arise. I see no basis for concluding that a GAL attorney would be incapable of being held to the same standard in contested involuntary termination of parental rights

cases. Further, in cases involving young children or children with limited capacity, the child may be unable to express a separate legal interest to an independent attorney appointed in addition to the GAL attorney, but would nevertheless be required to have one appointed under the plurality's interpretation. Therefore, I disagree with the plurality's holding that the GAL attorney cannot represent the child in a contested termination hearing.

In conclusion, by writing separately I am in no way discounting the importance of the child's interests or diminishing the mandate of Section 2313(a)'s requirement of appointment of counsel. A contested involuntary termination hearing is a proceeding with the highest level of finality, and no child should proceed into one absent representation by an attorney. I write separately because I believe appointment of a GAL attorney satisfies the mandates of Section 2313(a) and ensures the needs and welfare of the child will be adequately advanced. In my opinion, a remand for the appointment of a second attorney in this matter, when a GAL attorney already represented the children in accordance with Section 2313(a), is unnecessary. Accordingly, I dissent.

Justice Baer joins this dissenting opinion.